**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DESHON WHITE | : | |
| | : | |
| Appellant | : | No. 3254 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 5, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007716-2023

BEFORE: BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BOWES, J.: **FILED FEBRUARY 26, 2026**

Deshon White appeals from the judgment of sentence of two years of probation imposed upon his conviction for carrying a firearm in public in the city of Philadelphia. We affirm.

The trial court provided the following factual background:

Police Officer Jeremy Olesik, a [seventeen]-year veteran of the police force assigned to the Narcotics Enforcement Team [("NET")], testified that on August 31, 2023, at approximately 3:30 p.m., he was conducting narcotics surveillance on the 5100 block of Haverford Avenue. He observed [Appellant] sitting near Cozy's Bar on the south[ ]side of Haverford Avenue. At approximately 3:55 p.m., a brown Cadillac pulled up in front of the bar. Richard Thomas ("Thomas") exited the vehicle from the passenger side and approached [Appellant]. After engaging in a brief conversation, Thomas gave [Appellant] an undetermined amount of US currency. Thomas walked away towards the bar's entrance but then stopped and started patting his pockets. He returned to [Appellant], who passed him a small unknown object

_____

[*] Retired Senior Judge assigned to the Superior Court.

from his left pocket.  Thomas went inside the [*sic*] Cozy's Bar and exited approximately ten minutes later holding a clear cup in his hand.  [Appellant] then began walking away southbound on 51st Street, at which point Officer Olesik ordered back-up officers to stop [and arrest] both [Appellant] and Thomas.  From Thomas'[s] person, police recovered one white case containing [twenty-one] triangular pills stamped "Tesla."  Counsel stipulated that if [the arresting officer was] called to testify, he would state that he stopped [Appellant] on the south side of 5100 Haverford Avenue and recovered from him a handgun and $8 in cash.

Trial Court Opinion, 4/3/25, at 1-2.

Appellant was charged with firearms not to be carried without a license and carrying firearms in public in Philadelphia.  He filed a motion to suppress the gun that police recovered, arguing that they did not have reasonable suspicion or probable cause to stop and arrest him.  At the ensuing hearing, Officer Olesik testified to the above facts.  The court denied the motion and a stipulated bench trial followed, wherein it found Appellant guilty of carrying firearms in Philadelphia pursuant to 18 Pa.C.S. § 6108, but not guilty of the remaining offense.[1]

_____

[1] We acknowledge that in **Commonwealth v. Sumpter**, 340 A.3d 977 (Pa.Super. 2025), this Court determined that § 6108 was unconstitutional as applied to that appellant insofar as it prohibited open carry in Philadelphia. However, we declined to address the constitutionality of unlicensed concealed carry in Philadelphia.  **Id**. at 981.

The certified record suggests that Appellant's firearm was concealed.  **See** Complaint, 9/1/23; Information, 11/21/23.  Moreover, Appellant has not argued the constitutionality of the statute at issue on appeal.  **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); **Commonwealth v. Spone**, 305 A.3d 602, 609 (Pa.Super. 2023) ("Even issues of constitutional dimension cannot be raised

*(Footnote Continued Next Page)*

This appeal followed. The court ordered Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b).[2] He timely complied, and the court authored a responsive Rule 1925(a) opinion. Appellant raises the following question for our consideration: "Did not police lack the requisite probable cause under the Fourth Amendment for the arrest and search of [Appellant]?" Appellant's brief at 2 (some capitalization altered).

We begin with an overview of the guiding legal principles:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

_____

for the first time on appeal." (cleaned up)). Accordingly, **Sumpter** does not afford Appellant relief, and we decline to address this issue *sua sponte*. **See Commonwealth v. Hell**, 340 A.3d 977, 2025 WL 2612075, at *5 n.7 (Pa.Super. 2025) (non-precedential decision) (refusing to analyze the constitutionality of § 6108 in light of **Sumpter** because the appellant was convicted of carrying a concealed firearm without a license in Philadelphia and failed to raise the issue on appeal).

[2] We remind the trial court that all Rule 1925(b) orders must state that any issue not raised on appeal "**shall** be deemed waived." Pa.R.A.P. 1925(b)(3)(iv) (emphasis added).

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre[-]trial motion to suppress.

***Commonwealth v. Stoney***, 347 A.3d 671, 676 (Pa.Super. 2025) (cleaned up).

A warrantless arrest must be supported by probable cause, which "exists when the facts and circumstances within the knowledge of the arresting officer are reasonably trustworthy and sufficient to justify a person of reasonable caution in believing that the arrestee has committed an offense." ***Commonwealth v. Hoyle***, 337 A.3d 544, 562 (Pa.Super. 2025) (cleaned up). This Court has further explained that "probable cause for a warrantless arrest requires only the probability, and not a *prima facie* showing, of criminal activity." ***Commonwealth v. Floyd***, 313 A.3d 1061, 1065 (Pa.Super. 2024) (cleaned up). Additionally, "[t]he applicable standard for determining probable cause calls for a totality of circumstances analysis, not a mechanical consideration of specific factors." ***Commonwealth v. Salter***, 121 A.3d 987, 995 (Pa.Super. 2015).

An "officer's training and experience are [factors] in determining probable cause but relevant to the issue only if there is a nexus between those skills and the search and seizure of the person and/or evidence." ***Commonwealth v. Luczki***, 212 A.3d 530, 545 (Pa.Super. 2019) (citation omitted). For example, our High Court has found that a "nine-year veteran of the police force who was on undercover patrol in a high crime area that had

been designated by the Philadelphia Police Department as an Operation Safe Streets neighborhood" had probable cause to arrest the appellant where the officer observed a suspected drug transaction. ***See Commonwealth v. Thompson***, 985 A.2d 928, 936 (Pa. 2009). In its analysis, the Court recognized that the officer "was personally familiar with heroin sales activity in the neighborhood, heroin packaging, and hand-to-hand drug exchanges on the street," had seen that "type of exchange done several hundred times," and had made "several hundred narcotics arrests of th[at] very type." ***Id***. Similarly, this Court has held that where an officer, "with the benefit of extensive drug crime experience, observed suspicious behavior (the furtive glances up and down the street), followed by a hand[-]to[-]hand gesture the officer knew from experience was indicative of a drug transaction, in a known high crime neighborhood," he had probable cause for a warrantless arrest. ***Commonwealth v. Dixon***, 997 A.2d 368, 380 (Pa.Super. 2010).

Appellant argues that "there was not a sufficient means established between [Officer Olesik's] experience and the particular circumstances that he observed" to arrest Appellant. ***See*** Appellant's brief at 12. Since Thomas initially walked away from Appellant after handing him cash, he maintains that no hand-to-hand transaction occurred. ***Id***. at 12-13. He explains that "[t]here is a reason for narcotics transactions being a simultaneous exchange of money for drugs . . . so neither person could simply run away without performing his part of the bargain." ***Id***. at 13. Appellant therefore contends

that although Thomas returned to him, there was no "reasonable inference that he did so because he realized that moments earlier he forgot to get the drugs he paid for." *Id*. Appellant avers that "Officer Olesik's experience should not be considered a relevant factor based on the unusual circumstances he observed that are markedly different from his prior experience." *Id*. Even if this Court believes that the officer's experience is a relevant factor, Appellant points out that the exchange occurred during the day in an area not specifically designated as high-crime. *Id*. at 13-14.

The trial court summarized its analysis as follows:

[I]n the case at bar, Officer Olesik was a [seventeen]-year veteran of the Philadelphia Police force and had served for approximately [seven] years as a member of the [NET]. Officer Olesik had received extensive training [in] the sale and packaging of drugs and had personally participated in hundreds of narcotics investigations, surveillances[,] and arrests. Officer Olesik further testified that he was familiar with the 5100 block of Haverford Avenue as this was part of his NET division and that he was in the area that day to address known narcotics concerns. Based upon his training and experience, together with his personal observations of [Appellant] and Thomas'[s] interaction that day in a neighborhood known for drug sales, Officer Olesik reasonably believed that [Appellant] was selling narcotics. This was sufficient to establish the necessary probable cause to arrest [Appellant]. Once [he] was placed under arrest, the police lawfully were able to perform a search incident to arrest for their own safety, which in fact resulted in the police recovering a loaded firearm.

Trial Court Opinion, 4/3/25, at 5-6 (cleaned up).

The court's determination, which is supported by the record, is apt. Like the officers in *Thompson* and *Dixon*, Officer Olesik had vast experience with drug arrests and surveillance of narcotics activity. Although the area was not

designated as generally high-crime, the officer was responding to reports of drug exchanges on the particular block in question, with which he was familiar. Additionally, the officer was specially trained in illegal drug trafficking. As to Appellant, Officer Olesik explained that, based on his training and experience, he knew the type of exchange between Appellant and Thomas was consistent with narcotics activity. **See** N.T. Suppression, 8/27/24, at 14 ("They had a conversation. [Thomas] passed [Appellant] money and then [Appellant] returned him something in return for that."). The officer therefore established the requisite nexus between his knowledge and Appellant's behavior. **See Luczki**, 212 A.3d at 545. The fact that Thomas initially walked away from Appellant without the drugs is immaterial considering he almost immediately turned around to complete the exchange. The totality of the circumstances within Officer Olesik's purview were thus "reasonably trustworthy and sufficient to justify" his belief that Appellant had committed an offense. **See Hoyle**, 337 A.3d at 562.

Accordingly, we discern no error in the trial court's denial of Appellant's motion to suppress the firearm and affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>2/26/2026</u>